

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 15, 2014**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: § | | CHAPTER 7 |
| TUSA-EXPO HOLDINGS, INC., OFFICE EXPO, § | | |
| INC., AND TUSA OFFICE SOLUTIONS, INC. § | | CASE NO.: 08-45057-DML-7 |
|     DEBTORS. § | | (JOINTLY ADMINISTERED) |
| § | | |
| MARILYN D. GARNER, CHAPTER 7 TRUSTEE § | | |
| FOR TUSA OFFICE SOLUTIONS, INC., § | | |
|     PLAINTIFF, § | | |
| § | | ADVERSARY NO. 10-04271-DML |
| V. § | | |
| § | | |
| KNOLL, INC. § | | |
|     DEFENDANT. § | | |

### MEMORANDUM OPINION

Before the court is *Knoll, Inc.'s Motion for Partial Summary Judgment* (the "Motion")

and the *Trustee's Response to [the Motion]* (the "Response"), at docket nos.[1] 68 and 100,

---

[1] "Docket no. __" shall hereinafter refer to documents filed in the Adversary. The court will refer to documents filed

respectively, in the above-captioned adversary proceeding (the "Adversary").  By the Motion, Knoll requests that the court grant summary judgment in its favor with respect to certain avoidance actions brought against Knoll in the *First Amended Complaint of the Trustee Against [Knoll]* (the "Amended Complaint") at docket no. 17 in the Adversary.

On January 25, 2012, the court held a hearing on the Motion and took it under advisement.[2]  On April 4, 2012, the court held a status conference with respect to the Adversary and determined that, pursuant to Federal Rule of Bankruptcy Procedure[3] 7042, it would bifurcate the issues presented in the Amended Complaint in order to expedite and economize the Adversary.  In doing so, the court decided to table the Motion pending the outcome of a trial on Counts I and II of the Amended Complaint (the "Bifurcated Trial").  At the conclusion of the Bifurcated Trial, the court issued its Memorandum Opinion with respect to Counts I and II (the "Prior Opinion").[4]  The court will now turn to the Motion and determine whether Knoll is entitled to summary judgment with respect to Counts III, V, and VI.[5]

After careful consideration of the various briefs and appendices submitted by the parties as they relate to the Motion as well as other relevant materials in the record as indicated below, the court has reached the following conclusions.

---

in the Bankruptcy Case as "Bankruptcy Case, docket no. ___."

[2] Although the court took the Motion under advisement, the parties were given additional time to submit supplemental briefs on the issue.

[3] "Rule" or "Rules" shall hereinafter refer to the Federal Rules of Bankruptcy Procedure.

[4] *Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.)*, 496 B.R. 388 (Bankr. N.D. Tex. 2013).

[5] Because the court previously disposed of Count II in the Prior Opinion, Knoll's request that the court grant summary judgment in its favor with respect to Count II is now moot and will not be addressed in this memorandum opinion.

2

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(F), (K). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## I.  Background Facts

Knoll manufactures and sells office furniture and related products. In addition to selling its products directly to customers, Knoll engages outside furniture dealers to market and sell its products. Prior to filing bankruptcy, Tusa Office Solutions, Inc. ("Tusa Office") operated a full service office furniture dealership and was one of the nation's largest dealerships of furniture manufactured by Knoll. As a full service dealership, Tusa Office not only sold office furniture, but also provided delivery and installation services.

On or around November 14, 2007, Knoll and Bank of America entered into a contract for the sale of new office furniture (the "BofA Project") whereby Knoll agreed to, among other things, arrange for the delivery and installation of the furniture at a location specified by Bank of America. On January 4, 2008, Knoll and Tusa Office entered into a contract whereby Tusa Office would be compensated by Knoll for performing certain design and installation services in connection with the BofA Project (the "Dealer Participation Agreement"). The Dealer Participation Agreement, for all intents and purposes, operated as a subcontract between Knoll and Tusa Office.

In January 2008, Tusa Office's credit limit with Knoll was $3.5 million. By June 2008, Tusa Office's debt to Knoll was in excess of $5.5 million. At this point, it became clear that Tusa Office needed to restructure its debt with Knoll or risk default under the existing credit agreement. As a certified dealer of Knoll products, Tusa Office's ability to continue its business

3

operations largely depended on its ability to order products from Knoll pursuant to the existing credit agreement.

On June 27, 2008, Tusa Office and Knoll entered into the Amended Payment Agreement in order to restructure debt that Tusa Office owed to Knoll. To that end, Knoll calculated Tusa Office's projected revenues under the Dealer Participation Agreement and provided a mechanism for Tusa Office to apply such revenues to its past-due indebtedness thereby increasing its available credit with Knoll. To facilitate this transaction, Tusa Office assigned to Knoll its right to receive payments under the Dealer Participation Agreement. Thus, under the Amended Payment Agreement, Knoll was given reassurance that Tusa Office would pay down its debt and, with the additional credit, Tusa Office was able to order the necessary products from Knoll to continue its operations.

On July 9, 2008, Knoll and Textron Financial, Inc. ("Textron")[6] entered into the Subordination Agreement, which among other things, recognized and restated that "any amounts owed by [Knoll] to [Tusa Office], whether by offset or otherwise, shall never be Junior Liabilities and are not subordinated or otherwise affected by [the Subordination Agreement]."[7]

On November 5, 2008 (the "Petition Date"), Tusa Office filed for chapter 11 bankruptcy. On November 10, 2008, Textron, Knoll, and the Debtor entered into the Ratification and Amendment Agreement (the "DIP Loan Agreement"), in order to address, among other things, Debtor's business relationship with Knoll going forward and to set forth the terms of a post-

---

[6] Tusa Office and Textron simultaneously negotiated and entered into a contract whereby Textron would provide Tusa Office additional financing provided that Knoll agreed to subordinate certain of its rights to collateral to Textron.

[7] *See* Subordination Agreement, docket no. 70, at 124.

petition loan.[8]  On November 26, 2008, the court entered the Final DIP Order, which incorporated the terms and provisions of the DIP Loan Agreement.[9]

On December 24, 2008, the court entered the *Agreed Order Granting [Textron] and [Knoll]'s Joint Motion for Relief from Stay* (the "Stay Relief Order").[10] The Stay Relief Order granted Knoll relief to, among other things, "exercise [its] state law rights to obtain, liquidate, sell, foreclose upon, or otherwise dispose of or collect on the Collateral . . . ."[11]  On July 16, 2009, Tusa Office's bankruptcy case was converted from a case under chapter 11 to one under chapter 7.[12]

On November 4, 2010, Marilyn D. Garner as chapter 7 trustee (the "Trustee") initiated the Adversary.  In the Amended Complaint, the Trustee outlined seven counts by which she sought to avoid certain transfers made between Knoll and the Debtor.  The Motion followed.

## II.    Discussion

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13]  By contrast, to defeat a properly supported motion for summary judgment, the nonmovant must present more

---

[8] *Id*. at 174.

[9] Final DIP Order, docket no. 70, at 141.

[10] Stay Relief Order, Bankruptcy Case, docket no. 116.

[11] *Id*. at 2.

[12] *See Order Converting Cases from Chapter 11 to Chapter 7*, Bankruptcy Case, docket no. 244.  On the same date, Marilyn D. Garner was appointed as chapter 7 trustee to oversee the administration of the Bankruptcy Case.  *See* 11 U.S.C. § 701.

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (internal quotations omitted); *see also* FED. R. BANKR. P. 7056.

than a mere scintilla of evidence.[14]  Rather, the nonmovant must present sufficient evidence upon which a trier of fact could reasonably find in the nonmovant's favor.[15]

## A. Count III

In Count III of the Amended Complaint, the Trustee seeks "avoidance of the assignment to Knoll of Tusa Office's Receivables from the Bank of America Project arising after the petition date and the attachment of Knoll's liens to receivables arising from the Bank of America Project after the petition date pursuant to 11 U.S.C. § 549."[16]  Knoll maintains that Tusa Office did not generate any receivables directly payable to it from Bank of America after the Petition Date and therefore Count III fails as a matter of law.[17]

>Code section 549 states, in pertinent part, that:
>
>**(a)** Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
>**(1)** that occurs after the commencement of the case; and
>
>**(2)(A)** that is authorized only under section 303(f) or 542(c) of this title; or
>
>**(B)** that is not authorized under this title or by the court.

Thus, in order for the Trustee to avoid a transfer under Code section 549, she must first establish that such transfer occurred after the commencement of the case.

The Trustee argues that upon the Tusa Office's completion of a given task under the Dealer Participation Agreement, it generated a right to receive payment from Knoll.  The Trustee suggests that because the "receivables" or conversely the right to receive such receivables were generated after the Petition Date, Knoll's liens and Debtor's subsequent assignment of such

---

[14] *See Anderson*, 477 U.S. at 251.

[15] *Id.*

[16] *See* Amended Complaint, docket no. 17, at 8.

[17] Motion, docket no. 68, at 15.

receivables to Knoll were impermissible transfers. While the court appreciates the Trustee's argument, it would have to ignore the terms of the Dealer Participation Agreement and Amended Payment Agreement in order to find it persuasive.

As established in the Prior Opinion, "[t]he fact that a right . . . is conditional on the performance of a return promise or is otherwise conditional does not prevent its assignment before the condition occurs."[18] "The settled rule of law generally prevailing [is] that a present assignment of an interest passes the title to it as of the date of the assignment [and] moneys collected under it are the moneys not of the bankrupt, but of the assignee . . . ."[19]

As discussed above, Tusa Office assigned its right to receive payments from Knoll under the Dealer Participation Agreement when it entered into the Amended Participation Agreement on June 27, 2008.[20] Thus, under the Amended Payment Agreement, Tusa Office unequivocally assigned and granted a lien in favor of Knoll in all amounts due from Knoll to Tusa Office under the Dealer Participation Agreement well before the Petition Date.

This provision of the Amended Payment Agreement was unaffected by the Subordination Agreement. Moreover, Debtor's acknowledgement and agreement to honor the terms of the Amended Payment Agreement was memorialized in the DIP Loan Agreement, which was later incorporated into the Final DIP Order. Therefore, the transfers described in Count III of the Amended Complaint may not be avoided under section 549 of the Code because Tusa Office transferred its interest in such amounts prior to the Petition Date. However, to the

---

[18] Prior Opinion, at 29 (citing RESTATEMENT (SECOND) OF CONTRACTS § 320 (1981)).

[19] *Gamble v. Mathias*, 61 F.2d 911, 911 (5th Cir. 1932).

[20] Specifically, the Amended Payment Agreement provides that Tusa Office "assigns to [Knoll], and grants to [Knoll] a security interest in, lien upon and right of offset against, all amounts due . . . by Bank of America, N.A. to [Knoll] and then to be paid or credited to [Tusa Office]."

extent the challenged transfers were post-petition, they were approved by the court through its approval of the DIP Loan Agreement.

Accordingly, when the evidence before the court is viewed in a light most favorable to the Trustee, the court cannot find that there is any issue of material fact and Knoll is entitled to judgment with respect to Count III as a matter of law.

## B. Count V

In Count V of the Amended Complaint, the Trustee contends that Knoll impermissibly setoff post-petition amounts totaling $418,882.46 without court permission and in violation of the automatic stay (the "Post-Petition Setoffs").[21]  Alternatively, the Trustee suggests that even if Knoll were authorized to effectuate the Post-Petition Setoffs, Knoll was not authorized to setoff Pre-Petition Debt with Post-Petition Collateral.[22]  The Trustee requests that the court award damages including actual damages, costs, attorneys' fees, sanctions and punitive damages pursuant to Code section 362(k) for Knoll's alleged violation.  Knoll denies the Trustee's allegations and submits that it is entitled to judgment as a matter of law.

Code section 362(k) states, in pertinent part, that:

> **(k)(1)** Except as provided in paragraph (2), an *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.[23]

Therefore, in order to recover under section 362(k), the Trustee must be an "individual" within the meaning of the statute.

---

[21] The Trustee calculated this amount by adding amounts reflected in nineteen separate credit memos issued by Knoll to Tusa Office after the Petition Date.  *See* Amended Complaint, Ex. C.

[22] Response, docket no. 100, at 18.

[23] 11 U.S.C. § 362(k)(1) (emphasis added).

The Code does not provide a definition for the term "individual," however, it does distinguish between the terms "corporation" and "individual." This distinction is evident in the Code's definition of the term "person," which includes "individual" and "corporation."[24] Congress's use of the restrictive term "individual" in section 362(k) rather than the inclusive term "person" indicates that damages under the statute are only available to natural persons.[25] Moreover, section 362(h), section 362(k)'s predecessor, was enacted under the "Consumer Credit Amendments" section of the Bankruptcy Amendments and Federal Judgeship Act of 1984,[26] which indicates that section 362(k) was never intended to provide recovery to corporations. Thus, the statutory scheme of the Code limiting recovery of damages to individuals under section 362(k) is coherent and consistent.[27] Indeed, the majority of courts have strictly applied the plain meaning of the term for purposes of 362(k).[28]

---

[24] 11 U.S.C. § 101(41).

[25] *See First Republic Bank Corp. v. NCNB Texas Nat'l Bank*, 113 B.R. 227, 278-79 (N.D. Tex. 1989).

[26] PL No. 98-353, 98 Stat. 333.

[27] "If the statutory scheme of the Bankruptcy Code is coherent and consistent, 'there generally is no need for a court to inquire beyond the plain language of the statute.'" *In re First Republic Bank Corp.*, 113 B.R. at 278 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989)).

[28] *See*, *e.g.*, *In re C.W. Min. Co.*, 477 B.R. 176, 193-94 (10th Cir. BAP 2012) (holding that a trustee acting on behalf of a bankruptcy estate, which is an artificial entity, is not an "individual"); *Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.)*, 346 F.3d 1, 8 (1st Cir. 2003) (holding that a corporation is not an "individual" for purposes of 362(h)); *Havelock v. Taxel (In re Pace)*, 67 F.3d 187 (9th Cir. 1995) (holding that a trustee is not an "individual" for purposes of 362(h)); *Sonse v. Reinert & Duree, P.C. (In re Just Brakes Corp. Sys., Inc.)*, 108 F.3d 881, 884-85 (8th Cir. 1997) (holding that under 362(h), the term "individual" does not apply to corporate entities); *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1551–53 (11th Cir. 1996) (same); *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 186–87 (2nd Cir.1990) (holding that the term "individual" applied only to natural persons and not artificial entities); *In re Amberjack Interests, Inc.*, 326 B.R. 379, 385 n.1 (Bankr. S.D. Tex. 2005) (stating that a trustee acting on behalf of the estate of a debtor corporation cannot be considered an "individual" for purposes of 362(h)); *First Republic Bank Corp.*, 113 B.R. at 278-79 (holding that a corporation is not an individual under section 362(h)).

*But see In re Atl. Bus. and Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir.1990) (stating that "Although Section 362(h) refers to an "individual," the section has uniformly been held to be applicable to a corporate debtor"); *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292 (4th Cir.1986) ("we construe the word 'individual' to include a corporate debtor"); *In re Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 439 (N.D. Ill. 1995) (holding that a chapter 7 trustee may recover damages on behalf of a bankruptcy estate pursuant to 362(h)).

9

While the Fifth Circuit has not yet determined whether a trustee has standing to pursue damages under section 362(k), the court finds its decision in *St. Paul Fire & Marine Insurance Company v. Labuzan* instructive.[29] In *St. Paul Fire*, the Fifth Circuit determined that individuals acting in their capacity as pre-petition creditors of a corporate debtor had standing to request damages pursuant to section 362(k) of the Code.[30] However, the court held that the same individuals lacked standing under section 362(k) when acting on behalf of a debtor corporation.[31] It follows that, the Trustee, acting on behalf of the estate of a debtor corporation lacks standing to seek damages under section 362(k).

Accordingly, when the evidence before the court is viewed in a light most favorable to the Trustee, the court cannot find that there is any issue of material fact and Knoll is entitled to judgment with respect to Count V as a matter of law.

**C.  Count VI**

In Count VI of the Amended Complaint, the Trustee seeks to avoid a Post-Petition wire transfer (the "Post-Petition Wire Transfer") in the amount of $300,000 from Debtor to Knoll pursuant to Code section 549 because Knoll allegedly applied the Post-Petition Wire Transfer to the Pre-Petition Debt.  Knoll argues that it used the Post-Petition Wire Transfer to pay Post-Petition Obligations in the ordinary course of business and is therefore entitled to judgment as a matter of law.

---

[29] 579 F.3d 533, 543 (5th Cir. 2009) (stating "At the outset, we note: whether the [t]rustee had standing to assert an automatic-stay violation claim [under section 362(k)] . . . in bankruptcy court is not before us").

[30] *Id*. at 545.

[31] *Id*. at 545.  In making this determination, the court cited with approval the Ninth Circuit's decision in *In re Goodman*, 991 F.2d 613, 618 (9th Cir. 1993).  In *In re Goodman*, the Ninth Circuit stated that an "'individual' means individual, and not a corporation or other artificial entity." *Id*.  The Fifth Circuit noted that the Ninth Circuit's position on standing with respect to 362(k) was "consistent with our circuit's jurisprudence." *St. Paul Fire*, 579 F.3d at 543.

As discussed above, the Final DIP Order provided that "Debtors shall not use or apply proceeds from Post-Petition Collateral to any payment to . . . Knoll on account of the . . . Pre-Petition Debt."[32] To that end, the Trustee has submitted summary judgment evidence from the Debtor's records that seems to demonstrate that Knoll used the Post-Petition Wire Transfer to pay Pre-Petition Debt.[33] However, Knoll has submitted equally competent summary judgment evidence which indicates that Knoll used the Post-Petition Wire Transfer to pay Post-Petition Debt.[34]

Based on the summary judgment evidence alone, the court cannot definitively determine whether Knoll applied the Post-Petition Wire Transfer to Post-Petition Debt as required by the Final DIP Order or otherwise. Thus, because a question remains as to whether Knoll properly effectuated the Post-Petition Setoffs, Knoll's request for summary judgment with respect to Count VI must be denied.

## Conclusion

The Motion is granted in part and denied in part. Counsel for Knoll is directed to prepare and submit a partial judgment consistent with this Memorandum Opinion.

## End of Memorandum Opinion ##

---

[32] Final DIP Order, docket no. 70, at 145.

[33] Response, docket no. 100, at 21.

[34] Motion, docket no. 68, at 24-25.